UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SEAN C. WALKER                                              CIVIL ACTION

VERSUS                                                       NO: 09-4361

WARDEN TRAVIS, ET. AL                                        SECTION: "J"(4)

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

Also before the Court is a **Motion to Dismiss (R. Doc. 44)** filed by the State of Louisiana, through the Department of Public Safety and Corrections (DPSC)[1], Jeffrey Travis, and Bessie Carter seeking dismissal of all claims against them because there is not a state-created danger theory of liability under § 1983. The Defendants further contend that Carter had no direct involvement in the

---

[1] Although the Motion to Dismiss was filed by the Department of Public Safety and Corrections ("the Department"), Walker did not separately sue the Department. He did, however, file a claim against the Secretary of the Department of Public Safety and Corrections, which he identifies in his proposed Second Amended Complaint as James LeBlanc. Further, Walker had previously filed suit against Rayburn Correctional Center but later agreed to a voluntary dismissal which was signed by the undersigned on November 18, 2009. (R. Doc. 10.) Rayburn Correctional is a correctional facility under the authority of the Louisiana Department of Public Safety and Corrections.

acts giving rise to the alleged constitutional violations. Because the Court resolves this matter pursuant to its statutory duty to conduct a review of the claim pursuant to Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c), the Motion to Dismiss should be denied as Moot.

Also before the Court is Walker's **Motion for Leave to File Amended Complaint (R. Doc. 45)**. The proposed second amended complaint seeks to add Warden Tanner, the former Warden of the Rayburn Correctional Center, and an unidentified employee of the Department of Public Safety and Corrections, as a Defendant. The proposed Complaint also seeks to provide the identification of the Secretary of the Department of Public Safety and Corrections whom Walker included as a Defendant in his first amended complaint. The proposed amended complaint also provides additional background facts with no new allegations. The Court finds that, for reasons set forth below, the claims asserted against all defendants, both existing and proposed, are frivolous. Therefore, the motion to amend should be denied.

I.  **Factual Background**

The plaintiff, Sean Walker ("Walker"), is an inmate housed in the Rayburn Correctional Center ("RCC") in Angie, Louisiana. Walker filed this *pro se* and *in forma pauperis* complaint against Warden Jeffrey Travis and the Rayburn Correctional Center alleging that the Warden endangered his safety. Walker alleges that Travis failed to abolish R.C.C. Directive # 3.1.13 which required all inmates housed in the Sun Unit to be restrained with a hand-cuff waist belt combination and shackles before leaving a two-man cell and upon re-entering the cell. The procedure does not require that the inmate's cell mate also be restrained. Walker contends that on July 31, 2008, while fully restrained pursuant to the procedure, he was attacked by his unrestrained cell mate.

On November 18, 2009, Walker filed an Amended Complaint which added the Director of Nursing, the Secretary of the Louisiana Department of Corrections, and the Head of Risk Management for the State of Louisiana as Defendants.  (R. Doc. 11.)  On October 4, 2010, Walker filed a Motion for Leave to File an Amended Complaint which seeks to amend his complaint for a second time.  (R. Doc. 45.)  In his proposed amended complaint, Walker identifies the Director of Nursing as Bessie Carter and the Secretary of the Louisiana Department of Safety and Corrections as James LeBlanc.  He also asserts a claim against John Doe, an employee of the Division of Department of Public Safety and Corrections.  He also seeks to file a claim against Warden Robert C. Tanner, the Warden who originally implemented the restraint procedure.

Walker contends that on July 31, 2008, correctional officer Brink Hillman restrained him in the prescribed hand-cuff waist belt combination with shackles so that he could be escorted to a hearing with the Cell Block Review Board.  Upon return to his cell, and while still restrained, Walker's cell mate was ordered by Hillman to go to the back of the cell, kneel down, cross his legs, and place his hands on his head.  Walker then entered the cell, and was also instructed by Hillman to kneel.  Subsequently, Walker's cell mate attacked him by repeatedly hitting him in the face.  As a result, Walker sustained injuries to his left jaw and right eye, and also suffered from spotted vision. Walker also claims to have lost consciousness for ten minutes because he cannot remember anything that transpired during a ten minute period.  Walker contends that because of the procedure requiring restraints, he was unable to defend himself.

Walker recalls that Brinkman advised him that an EMT (Emergency Medical Technician) would provide him with medical care.  However, Brinkman later informed Walker that he would not

be seen by an EMT because he had already been seen by an EMT and Walker told that EMT that he was not injured. Walker does not recall seeing the EMT.

On August 1, 2008, Walker made a self declared emergency for his injuries. He saw a nurse on that day who gave him a single dose of Motrin and informed Walker that he should make a medical complaint during the routine sick call. The nurse also cleaned a cut on Walker's face.

On August 3, 2008, Walker made a complaint during the routine sick call. The nurse scheduled Walker for a doctor's appointment. On August 4, 2008, he submitted a request for administrative remedy to the ARP (Administrative Remedy Procedure) screening officer at Rayburn Correctional Center.

Walker contends that he was scheduled to see a Doctor on August 6, and 7, 2008. However, on both occasions, he was told that the doctor was on sick leave, and he did not have the opportunity to see a doctor.[2] On August 7, 2008, Walker again self declared a medical emergency and received two Motrin from a nurse. On August 14, 2008, Walker again had an appointment with the doctor. However, the doctor was still out on account of sick leave. Although Walker did not see a doctor on this date, he did receive X-rays to his head.

On August 22, 2008, Walker received a response from Major Leroy Graves[3] concerning his request for an administrative remedy. Graves denied the request because he found that there was no evidence to substantiate his claim.

---

[2]In his proposed Amended Complaint, Walker indicates that the Doctor was not on sick leave, and instead was on vacation.

[3]Although the Plaintiff identified Leroy Graves in the facts of his Amended Complaint, he is not included as a Defendant. It is also unclear whether Graves is the proposed Defendant identified as John Doe in Plaintiff's proposed second amended complaint.

On August 27, 2008, Walker saw the doctor who revealed that his X-rays did not indicate that there were any fractures on his face. That same day, the doctor scheduled him to see an ophthalmologist for his spotted vision. Walker saw the ophthalmologist on September 19, 2008, and was informed that his spotted vision was a result of "floaters." On September 29, 2008, Walker had a second appointment with the ophthalmologist who dilated his eyes. The ophthalmologist informed Walker that he could not do anything to eliminate the "floaters."

On October 13, 2008, Walker submitted a request for administrative review for his denied request for an administrative remedy. On December 12, 2008, the Director of Nursing, Bessie Carter, denied the request and stated that his medical needs were addressed in a timely and appropriate manner.

Walker alleges that the prescribed procedure which restrains only one cell mate while the other cell mate remains unrestrained constitutes deliberate indifference to his safety. He further contends that due to the delay in seeing a doctor, his wounds were required to heal without a doctor's assistance, and therefore the defendants demonstrated medical indifference. Walker therefore seeks an order from the court requiring the defendants to provide him with physical therapy and follow up medical treatment by a medical practitioner who has expertise in the treatment and restoration of his eyes. He also seeks monetary damages.

## II.     Standards of Review

### A.     Frivolous Review

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See*

*Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

  **B.** **<u>Leave to Amend</u>**

Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of pleadings. It provides that leave to amend pleadings "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). This and other federal rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. 41, 48 (1957).

Rule 15(a) evinces a liberal amendment policy and a motion to amend should not be denied absent a substantial reason to do so. *See Jacobsen v. Osborne,* 133 F.3d 315, 318 (5th Cir.1998). However, leave to amend is by no means automatic. *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir.1993); *Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666 (5th Cir.1981). The decision to grant or deny a motion for leave to amend lies within the sound discretion of the Trial Court. *Addington,* 650 F .2d at 666.

In exercising its discretion, the Trial Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Gregory v. Mitchell,* 634 F.2d 199, 203 (5th Cir.1981). Leave to amend should be denied when doing so is required for fairness to the party opposing the motion for leave to amend. *Zenith Radio Corp. v. Hazeltime Research, Inc.,* 401 U.S. 321 (1971).

**III.   Analysis**

    **A.   Frivolous Review**

        **1**.   **Failure to Protect Claim**

Walker contends that Warden Travis did not adequately protect him from the unexpected attack by his cell mate, and prevented him from being able to protect himself, by failing to abolish the procedure that he be shackled and handcuffed while failing to also restrain his cell mate.[4]

---

[4] In his proposed Amended Complaint, Walker contends that at some time in 2008, another inmate, Kenneth Duplessis, was attacked by his cell mate, John Doe, in a similar set of circumstances. Walker contends that this incident put Warden Travis on notice of the possibility that another restrained inmate could be attacked by a non-restrained inmate.

7

It is settled that, under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988). In *Farmer*, the Supreme Court set out the two-pronged test that determines when a failure to protect a prison inmate from assault by other inmates rises to the level of a constitutional violation. First, the prisoner must have been "incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. Second, the prison official must have shown "deliberate indifference" to the prisoner's safety. *Id.*

Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *Hines v. Lacy*, 189 F .3d 460 (2d Cir. 1999). In order to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

There is no indication that Warden Travis was aware that Walker's cell mate intended to injure Walker while he was restrained. The simple existence of the policy requiring handcuffing and shackling alone does not indicate that there were facts suggesting that Walker's cell mate would try to harm him. Consequently, based upon the pleadings, Walker has not alleged deliberate indifference necessary to state a claim for failure-to-protect. As a result, the failure to protect claim against Warden Travis should be dismissed because it is frivolous.

## 2. **Deliberate Indifference to Medical Needs**

Walker further contends that Warden Travis was indifferent to his medical needs. Specifically, Walker contends that despite several complaints, he was not able to see a doctor until 28 days after he sustained injuries. He complains that, although the doctor was out on either sick leave or vacation, there should have been an arrangement for him to see a substitute doctor. Walker contends that because he had to wait to see a doctor, his injuries healed without the benefit of being treated by a doctor.

The standard of conduct imposed on defendants with respect to the medical care of inmates was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Id.* at 104. This is true where the indifference is manifested by prison doctors in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.* Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton*, 122 F.3d at 292. Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action"); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere

negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983" (emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

In addition, the mere delay alone in receiving medical treatment is usually not sufficient to state a claim under § 1983. *Mendoza*, 989 F.2d at 195; *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990); *Simmons v. Clemons*, 752 F.2d 1053, 1056 (5th Cir. 1985). Regardless of the length of the delay, the plaintiff at a minimum must show deliberate indifference to a serious medical need to rise to the level of a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294 (1991); *see also Estelle,* 429 U.S. at 104-05.

In this case, the facts are not sufficient to state a claim for deliberate indifference to Walker's medical needs. Walker was seen by an EMT on the same day that he was injured, and he purportedly advised the EMT that he did not sustain any injuries. The following day, Walker self declared a medical emergency and received a dose of Motrin. On August 4, 2008, he again declared a medical emergency and received two Motrin.

On August 14, 2008, although he did not see a doctor, X-rays were performed on Walker. On August 27, 2008, he saw a doctor who informed him that the X-rays did not reveal any facial fractures. Subsequently, Walker had two separate appointments with a ophthalmologist.

In reviewing the facts as plead by Walker, while there was a delay in his ability to see a doctor, the facts confirm that when requested, he received medical care from the EMT and the nurses at Rayburn. Additionally, albeit delayed, Walker also saw the doctor who referred him to an ophthalmologist. Walker saw the ophthalmologist on two occasions. A mere delay in receiving medical treatment does not alone give rise to a medical indifference claim under Section 1983.

Therefore, under these set of facts, the Court finds that the complaint fails to state a claim for deliberate indifference to his medical needs.

### 3. Denial of ARP

Walker also seeks claims against Nurse Carter, and James LeBlanc, the Secretary of the Louisiana Department of Safety and Corrections, for their denial of his ARP.[5] He therefore contends that they should be held liable for deliberate indifference to his medical needs.

The United States Fifth Circuit has held that allegations that a prison official has failed to follow the prison's rules, regulations, or procedures cannot support a Section 1983 claim without an independent constitutional violation. *Eason v. Thaler*, 73 F.3d 1322 (5th Cir. 1996). Furthermore, inmates do not have a constitutional right to an adequate and effective grievance procedure. *See Propes v. Mays*, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *Carter v. Strain*, Civ. Action No 09-15, 2009 WL 3231826, at * 3 (E.D. La. Oct. 1, 2009); *Tyson v. Tanner*, Civ. Action No. 08-4599, 2009 WL 2883056, at * 5 (E.D. La. Aug. 25, 2009).

Walker has no constitutional right under the First or Fourteenth Amendments either to an ARP or to an effective ARP. *Buckley v. Barrow*, 997 F.2d 494, 495 (8th Cir. 1993); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).[6] Further, an inmate's right to seek redress through the federal courts generally is not compromised by the prison's refusal to entertain a grievance related to a constitutional violation. *Buckley*, 997 F.2d at 495; *Flick*, 932 F.2d at 729. Therefore to the extent

---

[5]In his proposed amended complaint, Walker also seeks to assert a claim for the denial of his ARP against John Doe, an employee of the Department of Public Safety and Corrections in Louisiana.

[6] *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) (right to access to courts may extend to ARP when prisoner is required to exhaust ARP before seeking relief in federal court); *Hancock v. Thalacker*, 933 F. Supp. 1449, 1488-89 (N.D. Iowa 1996). However, denial of access to this court is not an issue in this case.

that Walker complains about the denial of the administrative remedy procedure by LeBlanc and Nurse Carter, these claims are frivolous.

### B.     Leave to Amend

Walker's motion for leave to amend should be denied. The proposed Complaint seeks to add Warden Tanner, the former Warden of the Rayburn Correctional Center, as a Defendant and asserts claims for failure to protect and medical indifference against him. The proposed Complaint also seeks to assert a claim against an unidentified employee of the Department of Public Safety and Corrections for his denial of Walker's ARP.

For reasons discussed above, Walker's claims against Warden Tanner are futile. There is no indication that Warden Tanner, when implementing the procedure which caused Walker to be restrained, was aware of that Walker's cell mate intended to injure Walker while he was restrained. Walker has failed to plead the deliberate indifference necessary to state a claim against Tanner for failure to protect. Therefore, this claim is futile.

Further, as discussed above, Walker has not plead facts which would support a cause of action for deliberate indifference to medical needs. Walker ultimately saw a doctor and an ophthalmologist concerning his injuries. Therefore, this claim is futile.

As for the unidentified employee of the Department of Public Safety and Corrections for his denial of Walker's ARP, as discussed above, Walker has no constitutional right to an effective ARP. Therefore, this claim is also futile.

### V.     Recommendation

It is therefore **RECOMMENDED** that Sean Walker's 42 U.S.C. § 1983 claims against the defendants, Warden Jeffery Travis, Nurse Bessie Carter, and the Secretary of the Louisiana

Department of Public Safety and Corrections be **DISMISSED WITH PREJUDICE** as frivolous pursuant to 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1997e.

**IT IS FURTHER RECOMMENDED** that the **Motion to Dismiss ( R. Doc. 44)** filed by the State of Louisiana Department of Public Safety, Warden Jeffery Travis, and Nurse Bessie Carter be **DENIED** as **MOOT**.

**IT IS FURTHER RECOMMENDED** that the **Motion for Leave to File Amended Complaint (R. Doc. 45)**, filed by Sean C. Walker, be **DENIED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[7]

New Orleans, Louisiana, this 18th day of January, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[7]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.